Billy R. THOMPSON *v.* STATE of Arkansas

CR 98-1243                                            999 S.W.2d 192

Supreme Court of Arkansas
Opinion delivered September 23, 1999

*Appellant*, pro se.

*Mark Pryor*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. This is an appeal from the appellant Billy R. Thompson's convictions for first degree murder and felon-in-possession-of-a-firearm for which he was sentenced respectively to life and 360 months in prison. He raises the fol-

lowing two points on appeal: 1) the State failed to prove that he had the purpose of causing the death of another human being, as is required for a first-degree murder conviction, and 2) the trial court erred in failing to sever the murder charge from the felon-in-possession charge. We affirm.

In Mayflower, around 7:00 p.m. on August 24, 1997, a neighbor heard what sounded like a gunshot come from the vicinity of Billy and Sandra Thompsons' house. Sometime after 8:00 that evening, Billy Thompson called a friend, Geneva York, and told her that he had killed his wife. He asked York to come over. At 8:24, the Mayflower 911 dispatcher received a call from Thompson, during which he said that he "thought" he had shot his wife with a .38 pistol. The first police officer arrived about 8:30 and found the body of Sandra Thompson slumped over on a love seat with a gunshot wound to her neck.

Mayflower Chief of Police David Hart arrived at the scene around 8:45 p.m. While searching the house, he noticed that the bottom of the shower and the sink were wet, as though someone had recently taken a shower. A gunshot residue test was performed on Thompson, but no elements were found on his hands and the test was ruled inconclusive. In addition, the .38 that Thompson had indicated as the one he used in the shooting was tested for blood and fingerprints. The test for blood was negative, and the fingerprint testing was illegible and inconclusive. Chief Hart testified that the gun "had no prints at all on it as though somebody had wiped it off." Thompson was arrested and initially charged with second-degree murder. However, the State later amended its information to first-degree murder and added a charge of being a felon in possession of a firearm. Thompson had acquired a string of felony convictions extending back to the 1960s.

At trial, forensic pathologist Dr. Stephen Erikson testified that Sandra Thompson had died as a result of a close-contact gunshot wound to the neck. The bullet passed through her spinal column, severing the nerves which controlled her diaphragm and motor control, rendering her unable to breathe or move, and lead-

ing to her death within a matter of minutes. Faulkner County Coroner Patrick Moore testified that Sandra's injuries were consistent with a homicide, as opposed to a suicide, as suicide victims tend to shoot themselves in the head and not in the neck. Moore also testified that there was water and a damp towel, but no blood, in the shower in the Thompsons' house.

Thompson's attorney moved for a directed verdict at the close of the State's case, contending that there had been insufficient evidence to prove that Thompson had the purpose of killing his wife, and that there had not been any in-court identification of Thompson. The court denied the motion on both points. Defense counsel rested without Thompson's testifying in his own defense; he renewed his motion for directed verdict, which was again denied. As previously mentioned, the jury convicted Thompson on both the first-degree murder and the possession of a firearm counts, which he challenges in this appeal.

Thompson first argues that the prosecution failed to prove that he had the requisite purpose necessary to uphold a first-degree murder conviction. In other words, the State was required to prove that Thompson purposely caused the death of his wife Sandra. *See* Ark. Code Ann. § 5-10-102(a)(2) (Repl. 1997). A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result. Ark. Code Ann. § 5-2-202(1).

A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Mulkey v. State*, 330 Ark. 113, 117, 952 S.W.2d 149, 151 (1997); *Williams v. State*, 325 Ark. 432, 437, 930 S.W.2d 297, 299 (1996). The intent necessary to sustain a conviction for first-degree murder may be inferred from the type of weapon used, from the manner of its use, and the nature, extent, and location of the wounds. *Id.* (citing *Walker v. State*, 324 Ark. 106, 918 S.W.2d 172 (1996)). Circumstantial evidence of a culpable mental state may constitute substantial evidence to sustain a guilty verdict when it excludes every other

reasonable hypothesis consistent with guilt. *Id.* Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond suspicion or conjecture. In such situations, the weight and value of testimony is a matter within the exclusive province of the jury. *Williams v. State*, 338 Ark. 178, 183, 992 S.W.2d 89, 93 (1999). On appellate review, it is only necessary for this court to ascertain that evidence which is most favorable to appellee, and it is permissible to consider only that evidence which supports the guilty verdict. *Mulkey*, 330 Ark. at 116, 952 S.W.2d at 151(quoting from *Williams*, 325 Ark. at 436, 930 S.W.2d at 299).

The evidence in this case indicates that Thompson shot his wife sometime around 7:00 p.m. on the evening of August 24, 1997. The shot was fired into her neck at point-blank range. Thompson called a friend and told her that he had killed his wife sometime after 8:00 p.m., but no call was placed to 911 until 8:24, an hour and a half after the shooting occurred, at which time Thompson told the dispatcher that he had shot his wife. From the testimony of both the Mayflower Chief of Police and the Faulkner County Coroner, the shower was still wet when they arrived at the house between 8:45 and 9:00 that evening, indicating that someone had recently used it. Crime lab analysis of the gun used in the shooting showed that it had been wiped clean of fingerprints and showed no traces of blood or tissue, which would be expected in a tight contact shooting such as this.

■ ■ From the foregoing evidence, the jury could have reasonably inferred that Thompson killed his wife, took a shower to clean any blood and gunshot residue off him, wiped the gun used in the shooting clean of any fingerprints, blood, or tissue, and only then did he call a friend and 911 for assistance. While the verdict was based on circumstantial evidence, it is clear that the evidence excludes any other hypothesis consistent with innocence. Thompson's attempts to cover up his connection to the crime were properly put before the jury, *see Brenk v. State*, 311 Ark. 579, 585, 847 S.W.2d 1, 5 (1993), and the jury could have properly

considered this evidence as proof of a purposeful mental state. *See Mulkey*, 330 Ark. at 117, 952 S.W.2d at 151.

Thompson's opposing argument is based on the complex nature of the injury inflicted on the victim, as described in the medical examiner's testimony. He admits that he would have known that such a shot would cause serious injury, but argues that he did not have a sufficient knowledge of the human nervous and vascular system to have the purpose of causing the victim's death. If he had possessed such a purpose, he says, he would have shot her in the head "where it would do more good." Nonetheless, it is axiomatic that one is presumed to intend the natural and probable consequences of his actions. *Smith v. State*, 337 Ark. 239, 242, 988 S.W.2d 492, 493 (1999) (citing *Walker*, 324 Ark. at 109, 918 S.W.2d at 173). When one puts a .38 caliber pistol directly up against another person's neck and fires the gun, the natural and probable consequence of that act is the death of the victim. Thompson's lack of a medical degree notwithstanding, he indisputably shot his wife in the neck, and whether he knew the precise mechanics of how the shot would kill her is a meritless argument.

In his second point, Thompson asserts that the trial court erred by not severing the first-degree murder charge from the felon-in-possession charge. Under Ark. R. Crim. P. 22.2(a), if two offenses have been joined because they are of the same or similar character, but were not part of a single scheme or plan, the defendant shall have a right to a severance of the offenses. However, the defendant's motion for severance must be timely made before trial, except that a motion for severance may be made before or at the close of all the evidence if based upon a ground not previously known. Severance is waived if the motion is not made at the appropriate time. Ark. R. Crim. P. 22.1(a).

Appellant concedes that he never moved to sever or object to the joining of the charges. Indeed, he acknowledges that he raises the issue for the first time on appeal and that this court will not hear issues for the first time on appeal. However, he asks us to conclude that the trial judge should have, on his own

motion, severed the two charges for separate trial. He relies on *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). There, we held that there were four possible exceptions to the rule that issues will not be heard for the first time on appeal, two of which appellant suggests could apply to his situation. First, he argues that the trial court should have intervened on its own motion to correct some serious error; failing that, he next urges that the court below should have determined that the failure to move for severance was an error which affected his substantial rights.

To support this latter argument, Thompson directs us to *Sutton v. State*, 311 Ark. 435, 844 S.W.2d 350 (1993), in which this court held that it was reversible error for the trial judge to refuse to sever a murder charge from a felon in possession charge. The error in that case arose from the fact that evidence supporting conviction on the murder charge was weak, and that the secondary charge created an undue degree of prejudice in the minds of the jury. However, unlike the situation here, the defendant in *Sutton* had made a pretrial motion to sever which the trial court denied. As a result, this court held that Sutton's motion was sufficient to preserve his severance issue on appeal.

■ When, as here, no motion for severance has ever been made, Rule 22.1(a) provides us with an answer: such motions must be made *timely* before trial. In short, our rules and case law recognize that even if one has a right to sever, that right can be waived, and the issue cannot be raised for the first time on appeal.

For the reasons stated above, we affirm. Pursuant to Ark. Sup. Ct. R. 4-3(h), we have reviewed the record and find no reversible error.