Richard Allen TERRELL *v.* STATE of Arkansas

CR00-138                                    27 S.W.3d 423

Supreme Court of Arkansas
Opinion delivered October 5, 2000

*Robert L. Herzfeld, Jr.*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

W H. "DUB" ARNOLD, Chief Justice. Appellant Richard Allen Terrell appeals the judgment of the Saline County Circuit Court finding him guilty of first-degree murder for the February 19, 1999, death of Kalob Allen Terrell, appellant's ten-week-old son. Medical testimony established that the child died from "shaken baby syndrome," as evidenced by the extent and type of injuries sustained by the victim.

Appellant was tried by a jury and sentenced to life imprisonment, which gives rise to our jurisdiction to review this matter under Ark. Sup. Ct. R. 1-2(a)(2). As his only point for reversal, appellant asserts that there was insufficient evidence that he knowingly caused the child's death to support a conviction on the charge of first-degree murder and that this Court should, therefore, either remand for a new trial or reduce the appellant's sentence to reflect a lesser-included offense which could be supported by the evidence. We affirm appellant's conviction and sentence.

## I. Sufficiency of the Evidence

At trial, the court denied appellant's timely directed-verdict motions. Appellant now challenges the sufficiency of the evidence to support his first-degree murder conviction. Appellant claims that his conviction must be reversed because the State failed to present sufficient evidence that he acted "knowingly" in causing the death of Kalob Terrell, as required by Ark. Code Ann. § 5-10-102(a)(3) (Repl. 1997), which provides that a person commits murder in the first degree if he knowingly causes the death of a person fourteen years of age or younger at the time the murder was committed.

■ ■ A motion for directed verdict is a challenge to the sufficiency of the evidence. The test for determining the suffi-

ciency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or another. *Byrd v. State*, 337 Ark. 413, 992 S.W.2d 759 (1999); *Ladwig v. State*, 328 Ark. 241, 943 S.W.2d 571 (1997). In a challenge to the sufficiency of the evidence, the appellate court reviews the evidence in the light most favorable to the State and sustains a judgment of conviction if there is substantial evidence to support it. *Abdullah v. State*, 301 Ark. 235, 783 S.W.2d 58 (1990).

■■ In his argument, appellant offers various purportedly exculpatory facts to be weighed against evidence presented at trial by the State. This court, however, views only the evidence that is most favorable to the jury's verdict and does not weigh it against other conflicting proof favorable to the accused. *Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994). A criminal defendant's intent or state of mind is rarely capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Green v. State*, 330 Ark. 458, 956 S.W.2d 849 (1997).

On February 18, 1999, ten-week-old Kalob Terrell was left in the care of his father, the appellant, at approximately 7:30 a.m. Both Kalob's mother, Tracy Crow, and the appellant testified that at the time, Kalob was a normal, healthy baby. Crow told appellant that the baby needed to be changed and fed. Rather than changing and feeding Kalob, appellant instead fell asleep and slept until he was awakened by Kalob's crying at approximately 9:15 a.m. Appellant testified that although he fed Kalob, the child kept crying, so appellant shook him. Kalob eventually went back to sleep. Later that day, at approximately 1:00 p.m., appellant was again awakened by Kalob's crying. Appellant testified that he fed and burped Kalob and when the child still would not stop crying, he shook him until his body went limp.

After a period of ten to fifteen minutes, during which time appellant claims he attempted some CPR on the child, appellant's roommate, Chad Caple, arrived at the residence and called 911. It was 2:10 p.m. when paramedics were called. Kalob was taken to the emergency room of Southwest Hospital and subsequently transported to Arkansas Children's Hospital in Little Rock, where he died on February 19, 1999. Although appellant admitted *at trial*

that he had shaken Kalob twice on February 18, 1999, and once previously in January, he never apprized any of the doctors, paramedics, family members, or authorities of this information. Instead, he repeatedly maintained, until his testified at trial, that he had no explanation for what might have caused Kalob's death, other than a fall from the couch the day before he was hospitalized.

Medical evidence adduced from the medical examiner and the treating physicians at Children's Hospital provides substantial evidence that the massive, mortal injuries that Kalob suffered occurred as the result of the fact that appellant shook him. Dr. Charles Kokes, a medical examiner at the Arkansas State Crime Lab, performed an autopsy on Kalob and testified that he died as the result of multiple head and chest injuries and that the death was a homicide. Specifically, he suffered from a swollen brain, a subdural hematoma, retinal hemorrhages, and fractured ribs. Dr. Kokes opined that these injuries were classic symptoms of shaken-infant syndrome.

Dr. Kokes further testified that Kalob's chest injuries were an indication of what occurred at the time that the head injuries took place. Six of Kalob's ribs had fresh fractures and one of the ribs was completely fractured in two parts. Fractured ribs are caused by excessive, compressive force and are an indication of the amount of force placed on the body of the infant prior to death. Dr. Kokes testified that another indication of the severity with which Kalob was shaken is the fact that his left eyeball had separated from the optic nerve. The doctor testified that he had never seen or heard about such a severe injury, which was a further indication of the severity with which Kalob was shaken. In addition, Kalob had bruises on the sides of his chin and the upper right front of his chest. Bruises are also indicative of applied blunt force.

Dr. Richard Leithiser, a pediatric radiologist at Children's Hospital, testified that in his opinion, Kalob's injuries were the result of a major trauma, probably a "shaking" or "squeezing" injury to the chest with a "forward-and-backward shaking" injury to the head that caused blood vessels in the head to break and major swelling of the brain, so severe, in fact, that the child had brain death. Dr. Michelle Moss, a specialist in pediatric intensive care at Children's Hospital, testified that the severe and repeated shaking was the only explanation for the type of injuries that Kalob suffered.

Dr. Jerry Jones, a pediatrician at Children's Hospital who specializes in child maltreatment, testified that Kalob was the victim of abuse and that his injuries were consistent with injuries that were typical of children who have been shaken. He also testified that Kalob's rib fractures were an indication that he had been grasped around his chest and then violently shaken while the chest was compressed, which caused his ribs to fracture.

We hold that the foregoing evidence is clearly substantial evidence that appellant committed first-degree murder. A person commits first-degree murder if "[h]e knowingly causes the death of a person fourteen (14) years of age or younger at the time the murder was committed." Ark. Code Ann. § 5-10-102(a)(2).

According to Ark. Code Ann. § 5-2-202 (Repl. 1997), "A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result." *Ladwig v. State*, 328 Ark. 241, 943 S.W.2d 571 (1997). As stated above, a criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *E.g., Steggall v. State*, 340 Ark. 184, 194, 8 S.W.3d 538, 545 (2000). Appellant's own conduct in giving different versions of the incidents of February 18, 1999, to medical and other authorities from what he testified to at trial defies the assertion that although he did shake Kalob to death, he did not do so "knowingly." In fact, appellant's failure to disclose the shaking incidents to authorities basically amounts to an attempt to cover up his connection to the crime. This attempt was before the jury, and the jury could have properly considered evidence of cover-up as proof of a purposeful mental state. *See, Steggall v. State, supra; Thompson v. State*, 338 Ark. 564, 999 S.W.2d 192 (1999). A jury need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct. *See e.g., Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997); *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996). Circumstantial evidence of a culpable mental state may constitute substantial evidence to sustain a guilty verdict. *Steggall v. State, supra*.

Clearly, the evidence was sufficient to show that appellant shook the child knowing that it was practically certain that his conduct would result in the child's death. As such, we affirm the

first-degree murder conviction and life sentence of Richard Allen Terrell.

## II. Rule 4-3(h) Compliance.

The transcript of the record before us has been reviewed in accordance with Ark. Sup. Ct. R. 4-3(h). No prejudicial errors have been found.

Affirmed.