James A. FERGUSON *v.* STATE of Arkansas

CR 99-999 33 S.W.3d 115

Supreme Court of Arkansas
Opinion delivered December 14, 2000

*Paul Petty, Madison P. Aydelott, III,* and *Patrick J. Benca,* for appellant.

*Mark Pryor,* Att'y Gen., by: *C. Joseph Cordi, Jr.,* Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant James A. Ferguson was convicted in the Woodruff County Circuit Court of the first-degree murder of his wife, Brenda Ferguson, and sentenced to life imprisonment. Appellant raises six points for reversal: (1) the evidence was insufficient to support his conviction; (2) he was denied a speedy trial; (3) the trial court erred in refusing to strike a potential juror for cause; (4) he was prejudiced by a witness's references to his having taken a polygraph test; (5) the trial court erred in refusing to grant a change of venue; and (6) the trial court erred in denying his motion to suppress taped custodial statements

between Appellant and another jail inmate. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

## I. Sufficiency of the Evidence

Appellant argues that there was insufficient evidence to convict him of the first-degree murder of his wife. Specifically, he contends that the proof failed to establish that the body discovered by the sheriff's department was that of his wife. We disagree.

The record reflects that on March 15, 1996, Brenda Ferguson was contemplating leaving her husband, Appellant. Around 8:00 or 8:30 p.m. that evening, Brenda was seen at a convenience store in McCrory, Arkansas. Her eyes were red and her mascara had run from crying. According to the cashier, Becky Mitchell, Brenda was wearing jeans, a T-shirt, and a blue windbreaker. Mitchell described the T-shirt as having something about nurses on it either "Nurses do it better," or "Nurses are special," or something similar. Mitchell let Brenda use the telephone. After she had done so, Brenda remained inside the store, where she stood near the front, watching out the window. After some time had passed, Brenda asked Mitchell if she could use the restroom. She then left the store, and Mitchell observed her outside in the parking lot. While Brenda was walking across the parking lot, Mitchell noticed a large, light yellow, older Ford truck pull up near her. There were two people in the truck. The driver got out of the truck and was apparently arguing with Brenda. While they were arguing, the driver snatched the blue windbreaker off Brenda. Mitchell could see that Brenda was trying to get away from the driver. Eventually, however, Brenda got into the truck. The driver then drove away, and that was the last time Mitchell saw Brenda.

Around 8:35 p.m. that evening, Brenda made a telephone call to her friend, Ruth Ann Bull. She described Brenda as being upset and having a shaky voice. During the call, Brenda reported that Appellant had been verbally abusing her. Brenda stated that he was on the back porch, playing loud music, and saying things that a normal person would not say. Brenda told her friend that she was going to move out and get an apartment of her own. At one point during their conversation, Brenda told Bull to hold on because she

thought Appellant might be listening to their conversation. When Brenda returned to the phone, she reported that she could not find her husband. Before they hung up, Ruth told Brenda that she could stay with her if she needed a place to stay that night. That was the last time Bull spoke to her friend.

Later that same evening, between 10:00 or 10:30 p.m., Chief Stacy Barker, of the McCrory Police Department, was on routine patrol near the Fergusons' home. When he stopped at the intersection adjacent to their house, Barker reported hearing a loud slam, like a tailgate being shut. When he looked over, he saw Appellant standing in his carport closing the tailgate of his truck. He then saw Appellant quickly go inside his house. Barker described Appellant's truck as an older-model, light yellow Ford. He stated that the truck was backed up to the kitchen door.

The next day, Appellant reported his wife missing to the sheriff, Jack Caperton. Appellant reported that Brenda had gone walking the night before and never returned home. He stated that she had been wearing a blue T-shirt, blue jeans, and white tennis shoes. He stated that the T-shirt had a picture of a stethoscope on it and was from the Harding School of Nursing. He also stated that she had been wearing her jewelry.

Brenda's body was discovered in a ditch about thirteen miles south of Augusta, Arkansas, on May 1, 1996. She was wearing the clothes described by Appellant and Becky Mitchell. Particularly, the T-shirt she was wearing had a stethoscope and some writing on it. She was also wearing a wristwatch, a ring, and a necklace. She was not wearing any shoes or socks. According to the medical examiner, the body was badly decomposed. There was duct tape around her head, covering her airways. The cause of death was either suffocation from the duct tape or as a result of the skull fractures on the left side of her head.

In addition to the foregoing evidence, the jury also heard the testimony of three men who were in the Woodruff County jail with Appellant. Collectively, they testified that Appellant admitted that he had killed his wife. According to their testimony, Appellant overheard Brenda talking on the telephone and saying that she was going to leave him. When he confronted her in the kitchen, she pulled away from him and fell and hit her head on the stove.

Appellant feared that she would call the police when she woke up, so he taped her head with duct tape, put her in a blanket, and put her in his truck. Appellant admitted that she was still alive when he taped her head. While he was placing her in the back of his truck, Appellant saw a police officer go by his house. He was startled and proceeded to move Brenda back into the house. He later put her back into his truck and disposed of her body. The next day, he reported her missing. According to one of the jail witnesses, Charles Rogers, Appellant expressed concern that he had forgotten to remove Brenda's rings and had also forgotten to put shoes on her.

At the conclusion of the State's case, Appellant moved for a directed verdict on the ground that there was not sufficient evidence for the jury to determine the identity of the body. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Terrell v. State*, 342 Ark. 208, 27 S.W.3d 423 (2000). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id*. Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or another. *Id*. On appeal, this court views the evidence in the light most favorable to the State and sustains a judgment of conviction if there is substantial evidence to support it. *Id*.

We conclude that the foregoing constitutes sufficient evidence from which the jury could have determined that the body found in the ditch on May 1, 1996, was that of Brenda Ferguson. Despite the fact that the body was very decomposed when it was found, there was sufficient evidence that it was Brenda Ferguson: (1) she was wearing blue jeans and a T-shirt with a stethoscope and nursing theme on it, just as was described to police by Appellant and Becky Mitchell; (2) she had on jewelry, as described by Appellant to the police; and (3) she had duct tape on her head and was not wearing any shoes, as Appellant had described to his fellow inmates. Additionally, the jury heard testimony to the effect that March 15, 1996, was the last time that anyone saw Brenda Ferguson alive. We thus affirm the trial court's denial of a directed verdict.

## II. Speedy Trial

■■ For his second point for reversal, Appellant argues that the trial court erred in denying his motion to dismiss for violation of his right to a speedy trial. Rules 28.1(c) and 28.2(a) of the Arkansas Rules of Criminal Procedure require the State to bring a defendant to trial within twelve months from the date a charge is filed in circuit court. *See Eubanks v. Humphrey*, 334 Ark. 21, 972 S.W.2d 234 (1998). If, however, prior to that time, the defendant has been arrested and is lawfully set at liberty, the defendant must be brought to trial within twelve months from the date of arrest. Rule 30.1 provides that if a defendant is not brought to trial within the requisite time, he or she will be discharged, and such discharge is an absolute bar to prosecution of the same offense and any other offense required to be joined with that offense. Once the defendant presents a prima facie case of a speedy-trial violation, *i.e.*, that the trial is or will be held outside the applicable speedy-trial period, the State has the burden of showing that the delay was the result of the defendant's conduct or was otherwise justified. *Dean v. State*, 339 Ark. 105, 3 S.W.2d 328 (1999); *Eubanks*, 334 Ark. 21, 972 S.W.2d 234.

The first thing we must determine is when the speedy-trial period commenced. Appellant asserts that the relevant date is May 3, 1996, the date that he was arrested. The State contends that Appellant never produced any evidence showing when he was arrested, and that this court should therefore consider the date the charge was filed, June 24, 1996, as the relevant date. We agree with the State that it is not clear from the record when Appellant was arrested; however, the record demonstrates that Appellant was initially placed in jail on May 7, 1996, and was brought before a judge for a probable-cause determination on May 9, 1996. Accordingly, we will use May 7, as the date that commenced the speedy-trial period. Appellant was not tried until February 3, 1999, 1,002 days after his initial incarceration. Appellant has thus established a prima facie violation of his right to a speedy trial. We must now consider whether there are any periods of time to be excluded from that calculation.

This case is somewhat difficult because some of the excludable periods overlap one another. Notwithstanding, our review of the record demonstrates that there are four types of excludable periods:

(1) the delay resulting from the grant of a nolle prosequi; (2) delays caused by pretrial motions filed by Appellant; (3) the delay caused by defense counsel's statement to the trial court that he would seek a writ of prohibition; and (4) continuances granted at Appellant's request. We discuss each of these periods separately.

### A. Nolle Prosequi

The first excludable period in this case is 251 days, beginning April 24, 1997, when a nolle prosequi was granted, and ending December 31, 1997, when the charge was refiled. Rule 28.3(f) of the Arkansas Rules of Criminal Procedure provides for the exclusion of:

> The time between a dismissal or nolle prosequi upon motion of the prosecuting attorney for good cause shown, and the time the charge is later filed for the same offense or an offense required to be joined with that offense.

The prosecutor filed the motion for nolle prosequi on April 22, 1997. The motion reflected that one of the State's key witnesses had recanted her testimony two weeks before and had since gone back to her original statement, but this time described an additional potential defendant in the crime. The motion also reflected that two other witnesses had informed the State that they wanted special treatment from the prosecutor in exchange for their testimony. The trial court granted the nolle prosequi on April 24, 1997. The order specifically provided that there was good cause to grant the motion, and that "the justification for the nol pros is not for problems of the State with the Arkansas Rules regarding speedy trial." The transcript of the proceeding reflects that the deputy prosecutor informed the trial court:

> The defense counsel, Paul Petty, and I have agreed to an order, a written order, nolle prosequing. And the reason that we have a written order is that there is an expressed provision that this nolle prosequi is not for purposes of speedy trial. Mr. Petty understands the problems that we have had with witnesses changing testimony in this case, and we would have to continue to investigate before a posture — being able to take to trial.

Though the record does not reflect that defense counsel was present at the foregoing proceeding, the prosecutor's assurance to the court

are confirmed by the fact that the order granting the nolle prosequi was signed "APPROVED" by both the deputy prosecutor and defense counsel.

Appellant argues on appeal, as he did in his motion to dismiss, that the 251 days should not be excluded because the nolle prosequi was not granted for good cause. The State argues that this argument must fail because Appellant did not make a contemporaneous objection to the trial court's finding that the nolle prosequi was granted for good cause. We agree with the State's argument on this point.

■ A contemporaneous objection to the excluded period is necessary to preserve the argument in a subsequent speedy-trial motion. *See Dean*, 339 Ark. 105, 3 S.W.3d 328; *Tanner v. State*, 324 Ark. 37, 918 S.W.2d 166 (1996); *Mack v. State*, 321 Ark. 547, 905 S.W.2d 842 (1995). The reason for requiring a contemporaneous objection is to inform the trial court of the reason for disagreement with its proposed action prior to making its decision or at the time the ruling occurs. *Dean*, 339 Ark. 105, 3 S.W.3d 328. The idea is to give the trial court the opportunity to fashion a different remedy. *Id.*

Here, defense counsel indicated that he did not oppose either the motion to nolle prosequi or the specific finding in the order that the motion was being granted for good cause shown. This is apparent from counsel's approval of the order granting the nolle prosequi. We are not persuaded by the assertion that the only thing counsel approved was the entry of an order that freed his client. This would have been the result even if counsel had not signed the order.

■ Additionally, we are not persuaded by Appellant's contention that the holding in *Carter v. State*, 280 Ark. 34, 655 S.W.2d 379 (1983), supports his argument that the time to contest good cause is when the motion to dismiss for lack of speedy trial is filed. That decision merely reflects that the time to establish good cause is when it becomes relevant. Moreover, at the time that the nolle prosequi was granted in *Carter*, in November 1980, Rule 28.3(f) contained no requirement for a showing of good cause. That rule was amended in June 1981, and now provides for an exclusion from the time for speedy trial "upon motion of the prosecuting attorney *for good cause shown.*" (Emphasis added.) Clearly, under the current

Rule 28.3(f), the time for showing good cause is at the time the motion to nolle prosequi is heard. Correspondingly, the time to object for a lack of good cause is also at the time the motion is heard. Thus, because Appellant waited until after the motion for nolle prosequi had been granted and the charge against him had been refiled, and because defense counsel approved of the order granting the nolle prosequi, his challenge to the finding of good cause is untimely. Accordingly, we affirm the trial court's ruling that this period of time, 251 days, is excluded from the one-year period for speedy trial.

### B. Delays Caused by Appellant's Pretrial Motions

■ Periods of time attributable to delays from pretrial motions filed by the defendant may be excluded from the speedy-trial period under Ark. R. Crim. P. 28.3. *See Gwin v. State*, 340 Ark. 302, 9 S.W.3d 501 (2000). Rule 28.3(a) provides:

> The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on the competency of the defendant and the period during which he is incompetent to stand trial, *hearings on pretrial motions*, interlocutory appeals, and trials of other charges against the defendant. No pretrial motion shall be held under advisement for more than thirty (30) days, and the period of time in excess of thirty (30) days during which any such motion is held under advisement shall not be considered an excluded period. [Emphasis added.]

In *Gwin*, we addressed for the first time the meaning of the phrase "hearings on pretrial motions." The State had argued that the period of time excluded by this phrase extends from the filing of the motion until the motion is heard by the court and no more than thirty days after the court takes the motion under advisement. We held:

> We agree with the State's interpretation that the excluded period contemplated by the rule begins at the time the pretrial motion is made and includes those periods of delay attributable to the defendant until the motion is heard by the court and not more than thirty days thereafter. This construction is consistent with our cases on defendant competency hearings also found in Rule 28.3. We note this is also consistent with the federal speedy-trial rule.

*Id.* at 306, 9 S.W.3d at 503-04 (citation omitted) (footnote omitted).

Here, the record reflects that numerous pretrial motions were filed by Appellant and heard by the trial court during different hearings. For example, on July 15, 1996, Appellant filed a motion to suppress the custodial statements made by Appellant to his fellow inmates. On August 5, 1996, a continuance was granted upon agreement of the parties to obtain additional information from the lead police investigator that was pertinent to his pretrial motions. The suppression hearing was held on November 4, 1996. At the conclusion of the hearing, the trial court took the motion under advisement and requested briefs from both sides. No ruling was made within thirty days after the hearing. The thirtieth day from the date of hearing was December 3, 1996. Thus, under our holding in *Gwin*, the period of time from July 15 to December 3, 141 days, should be excluded from the calculation of speedy trial as a period of delay attributable to hearings on a pretrial motion. Similarly, on December 4, 1996, Appellant filed a motion for a pretrial hearing to set bond. The motion was heard on February 3, 1997. Accordingly, the period of time from December 4, 1996, to February 3, 1997, 61 days, should be excluded.

We thus conclude that these two periods of delay, totaling 202 days, should be excluded from the calculation of speedy trial pursuant to Rule 28.3(a), as they were the result of delays from pretrial motions filed by Appellant. Although the trial court did not rely on these specific periods of delay in denying the motion to dismiss, we are not constrained by the trial court's rationale and may go to the record for additional reasons to affirm. *See Heagerty v. State*, 335 Ark. 520, 983 S.W.2d 908 (1998); *Haynes v. State*, 314 Ark. 354, 862 S.W.2d 275 (1993).

### C. Counsel's Statements

The next period that we believe should be excluded from the time for speedy trial is that resulting from defense counsel's statement that he would seek a writ of prohibition. The record reflects that Appellant filed a motion to dismiss for lack of speedy trial on January 26, 1998, and a hearing was held on February 2, 1998. After hearing arguments from both sides, the trial court denied the

motion. The following exchange then occurred between defense counsel, Paul Petty, and the trial court:

> MR. PETTY: Your Honor, then I feel I must be compelled to tell the Court that I am going to file a Writ of Prohibition. *I assume from this moment on any time that extends this time for trial will be charged against the defendant.*
>
> THE COURT: I would think so, from this time on yes.
>
> MR. PETTY: And if I'm right, then I'm right, and if I'm wrong then I guess this case will come back up at some point in time.
>
> THE COURT: That would be my understanding of the procedure. Are you going to do that today, I suppose, or tomorrow?
>
> MR. PETTY: I — I will file it, Your Honor, and will be a copy to [the deputy prosecutor] for his approval this afternoon.
>
> THE COURT: Okay.

The record does not reflect that a writ of prohibition was ever sought by Appellant.

The State argues that counsel's statement amounted to an unconditional waiver of Appellant's right to speedy trial from February 2, 1998, until the trial on February 3, 1999. Appellant, however, argues that counsel's assumption that the time would be charged to him was conditioned upon his pursuit of a writ of prohibition. Since no writ was ever sought, Appellant argues that the time for speedy trial was not tolled by counsel's statements. Appellant contends that it should have been obvious to both the State and the trial court that he had not pursued the writ as of March 1998. He relies on the following docket entries:

> 3/19/98 Cont. on Motion of Defendant Aug. 3, 98 Term / Pre-Trial June 30, 1998
>
> 9/24/98 Cont. on Motion of Defendant Feb. 1, 99 Term / P-T Jan. 4, 1998

We agree with Appellant's argument on this point.

■ ■ This court has long recognized that a defendant has no duty or obligation to bring himself or herself to trial; rather, the

burden is on the court and the prosecutor to see that the trial is held in a timely fashion. *See Eubanks*, 334 Ark. 21, 972 S.W.2d 234; *Tanner*, 324 Ark. 37, 918 S.W.2d 166. In the present case, we have no hesitancy in concluding that counsel's statement had a tolling effect on the speedy-trial period, based on his assertion that he would seek a writ of prohibition. *See Rhodes v. Capeheart*, 313 Ark. 16, 852 S.W.2d 118 (1993). The question, however, is whether the tolling effect extended up to the date of trial, one year and one day later. Under the particular facts of this case, we conclude that it did not. On this point we disagree with the State that anything short of a specific reassertion of his speedy-trial right by Appellant would have tolled the time indefinitely, even up to ten years. Given the foregoing docket entries made by the trial court, the State was undoubtedly aware that no writ of prohibition had been sought by Appellant. Otherwise, there would be no need for continuances of the trial date. Accordingly, we conclude that only that time from February 2, 1998, to March 19, 1998, a total of 45 days, should be excluded.

## D. *Continuances Requested by Appellant*

As discussed in the previous section, Appellant requested and was granted two continuances, the first from March 19, 1998, to August 3, 1998, 137 days, and the second from September 24, 1998, to February 1, 1999, 130 days.[1] It is undisputed that these periods should not be charged against the State. Delays resulting from continuances given at the request of the defendant are excluded in calculating the time for a speedy trial. *Eubanks*, 334 Ark. 21, 972 S.W.2d 234; *Rhodes*, 313 Ark. 16, 852 S.W.2d 118.

In sum, Appellant was arrested for the murder of his wife and initially placed in jail on May 7, 1996. He was tried on February 3, 1999, after the passage of 1,002 days. The excludable periods outlined above are as follows: (1) 251 days from April 24, 1997, to December 31, 1997, resulting from the grant of a nolle prosequi; (2) 141 days from July 15, 1996, to December 3, 1996, resulting from the hearing on the motion to suppress; (3) 61 days from December

---

[1] The docket also reflects a continuance granted on agreement of both parties from August 5, 1996, to November 4, 1996. That period, however, is included in the period resulting from the delay associated with Appellant's pretrial motion to suppress.

4, 1996, to February 3, 1997, for the hearing on the motion for bond; (4) 45 days from February 2, 1998, to March 19, 1998, resulting from the delay caused by counsel's announced intention to seek a writ of prohibition; (5) 137 days from March 19, 1998, to August 3, 1998, resulting from Appellant's requested continuance; and (6) 130 days from September 24, 1998, to February 1, 1999, resulting from Appellant's requested continuance. These six periods total 765 days. Subtracting those periods from the total time of 1,002 days, it is clear that Appellant was tried within the 365-day period for speedy trial. We thus affirm the trial court's denial of Appellant's motion to dismiss.

### III. Challenge to Juror

For his third point for reversal, Appellant argues that the trial court erred in denying his motion to strike juror Richard Bryson for cause. Appellant's motion below was based on the fact that Bryson had been employed as a Woodruff County deputy sheriff while Appellant was in jail, and that he had some conversations with Appellant at the time. After the trial court denied his motion to strike the juror for cause, Appellant used a peremptory challenge to remove the juror. Later on, after Appellant had used all his peremptory challenges, he attempted to strike juror Lisa Miller. Because he had used all his peremptory challenges, Miller was seated on the jury. At no time during the proceedings below, or even on appeal, did Appellant argue that Miller should have been removed from the jury for cause. Indeed, the record reflects that defense counsel told the trial court that he was just trying to use all of his peremptory challenges.

Appellant now argues that it was error for the trial court to deny his motion to strike Bryson for cause. He contends that because the trial court denied his motion to strike Bryson for cause, he was forced to accept Miller, whom he asserted that he would have used a peremptory challenge to strike. This court has recently held that the loss of peremptory challenges cannot be reviewed on appeal, and that the focus on appeal should be on the persons actually seated on the appellant's jury. *See Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999); *Willis v. State*, 334 Ark. 412, 977 S.W.2d 890 (1998). To challenge a juror's presence on appeal, an appellant must demonstrate that he exhausted his peremptory chal-

lenges and that he was forced to accept a juror *who should have been excused for cause. Id.* In other words, for us to review this issue, Appellant must have asked the trial court to remove Juror Miller for cause, and the trial court must have improperly denied the request. *Id.* Because Appellant failed to challenge Juror Miller for cause, we do not consider this claim.

We are not persuaded by Appellant's reliance on the holding in *Hobbs v. State*, 277 Ark. 271, 641 S.W.2d 9 (1982), wherein this court observed:

> The appellant argues that the trial court erred in failing to excuse for cause venireman Clarence Davis. The appellant excused Davis peremptorily. Although he later exhausted his peremptory challenges, the record does not reflect that any juror was seated, or forced upon him, whom he would have excused if he had been entitled to another peremptory challenge. Consequently, this issue may not be raised on appeal. *Hill v. State*, 275 Ark. 71, 628 S.W.2d 285 (1982); and *Conley v. State*, 270 Ark. 886, 607 S.W.2d 328 (1980).

*Id.* at 275, 641 S.W.2d at 12. Appellant contends that this holding is in conflict with the later holdings in *Bangs* and *Willis*. We disagree. The foregoing language does nothing more than point out that the appellant failed to make an assertion that he would have used a peremptory challenge to strike the juror. *Hobbs* stops short of holding that such an assertion is all the appellant would have to make. In this respect, the holdings in *Bangs* and *Willis* merely expand upon the holding in *Hobbs*. We thus affirm the trial court's ruling on this issue.

### IV. Reference to Polygraph Test

For his fourth point for reversal, Appellant argues that the trial court erred in denying his motion for mistrial when a witness made two references to Appellant's having taken a polygraph test. The State argues that this argument is procedurally barred because Appellant failed to object or move for a mistrial at the first opportunity. We agree with the State.

The law is well settled that to preserve an issue for appeal, a defendant must object at the first opportunity. *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000); *Swanigan v. State*, 336 Ark. 285,

984 S.W.2d 799 (1999); *Smith v. State*, 330 Ark. 50, 953 S.W.2d 870 (1997). Similarly, motions for mistrial must be made at the first opportunity. *Id.* The policy reason behind this rule is that a trial court should be given an opportunity to correct any error early in the trial, perhaps before any prejudice occurs. *Pyle*, 340 Ark. 53, 8 S.W.3d 491 (citing *Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998)).

 The record here demonstrates that the two references to Appellant's having taken a polygraph test were made during his cross-examination of Ruth Ann Bull. The colloquy between the witness and defense counsel is as follows:

> Q. Is there any reason that you didn't tell [Officer] Gary McKue that you went in the home and visited the home?
>
> A. No, there's not any reason at all.
>
> Q. They just did not ask you about it?
>
> A. Ah — I doubt if I was asked. I'm surprised I didn't mention that because I had two or three policemen in my yard the next time Jim Ferguson called. I had my daughter go get the police so they could overhear his conversation. I kept him on the line as long as I could so we could —
>
> Q. (*Interposing*) you mean later that day?
>
> A. Oh, no. This was after he'd taken his lie detector test; he called me, and the first thing he said was "Ruth Ann did my wife tell you that she was leaving me."
>
> Q. When was that?
>
> A. Right after they had taken him to, I believe, Forrest City, and ah tested him, the — however you say it, he took a lie detector test.

Following this exchange, defense counsel continued to cross-examine the witness, without making any objection to the foregoing testimony. Indeed, the record reflects that the motion for mistrial was not made until after the prosecutor had finished redirect of the witness. Thus, Appellant's failure to make a contemporaneous objection to this testimony prevents him from asserting on appeal any error on the part of the trial court for admitting the evidence. *See Hill v. State*, 337 Ark. 219, 988 S.W.2d 487 (1999).

██ ██ Moreover, despite the procedural bar, Appellant has failed to show that the trial court erred in denying his motion for mistrial. A mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when the fundamental fairness of the trial itself has been manifestly affected. *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000); *Ward v. State*, 338 Ark. 619, 1 S.W.3d 1 (1999). The trial court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse of that discretion, the decision will not be disturbed on appeal. *Id*. We defer to the trial court, as it is in a superior position to determine the effect of the allegedly prejudicial remark on the jury. *Id*. Furthermore, where the possible prejudice could have been cured by an admonition by the trial court, this court has found no abuse of discretion when defense counsel has refused the trial court's offer of such a curative instruction. *See Peeler v. State*, 326 Ark. 423, 932 S.W.2d 312 (1996); *Trull v. State*, 322 Ark. 157, 908 S.W.2d 83 (1995).

Here, the record shows that defense counsel's motion for mistrial was based on his assertion that the witness's reference to a polygraph test was improper and prejudicial. Defense counsel did not specify what alleged prejudice had occurred. The trial court denied the motion. At that point, the trial was recessed for the day. The next morning, before any further testimony had been taken, defense counsel renewed his motion for mistrial, arguing that the remarks about the polygraph test tainted the jury to the point that Appellant could not receive a fair trial. The trial judge indicated that he had given some thought to the motion overnight, and that he came to the conclusion that the witness's remarks were probably just as prejudicial to the State as they were to the defense, because the jury was not informed as to the results of the test. The trial judge thus denied the motion for mistrial. He offered to instruct the jurors that they should disregard any statement about the polygraph test, but this offer was rejected by defense counsel.

██ Under the circumstances, Appellant has failed to demonstrate that the trial court abused its discretion by denying the mistrial. The witness's remarks were spontaneous and obviously not solicited by the prosecution. More importantly, there was no prejudicial inference from the witness's remarks, as it was not evident from her testimony how Appellant scored on the test. This court has held that "the fact that the jury is apprised that a lie detector test

was taken is not necessarily prejudicial *if* no inference as to the result is raised or *if* any inferences [that] might be raised as to the result are not prejudicial." *Wingfield v. State*, 303 Ark. 291, 296, 796 S.W.2d 574, 576 (1990) (citing *Johnson v. Florida*, 166 So.2d798 (Fla. 1964)). Accordingly, we affirm the trial court's ruling on this issue.

## V. Change of Venue

For the fifth point for reversal, Appellant argues that the trial court erred in denying his motion for a change of venue. The record reflects that Appellant presented testimony from three witnesses to support his claim that it was not possible for him to receive a fair trial in Woodruff County. The hearing on the motion was held on August 6, 1998, over two years after the crime was committed. Appellant's first witness, Ray Waters, was the public defender of Woodruff County. He testified that the Ferguson murder case had been the topic of much conversation in the county, and that there had been some local newspaper reports about it. However, when asked about the possibility of picking an impartial jury in Woodruff County, Waters stated: "I can't say that there wouldn't be twelve (12) in the county whose minds aren't made up." Appellant's second witness, Mary Johnson, stated only that she had talked about the murder with other people when it first happened. On cross-examination, she admitted that she mainly talked to people in McCrory about the case, but that she did not know what people in other parts of the county were saying. Appellant's last witness, Dawn Odem, a revenue agent in Woodruff County, stated that the murder had been the topic of much discussion in the courthouse and the county in general. She then stated that she did not think it would be possible for Appellant to pick a jury that was impartial and unbiased. She did not provide any specific facts to support her opinion.

The State countered with three of its own witnesses, who collectively opined that the murder had initially been a hot subject, but that people had not made up their minds against Appellant. At the conclusion of the hearing, the trial court found that there had not been any evidence as to the feeling amongst all the citizens of the county. The court pointed out that most of the testimony pertained to citizens in McCrory and Augusta. The trial court thus

concluded that Appellant had failed to meet his burden of demonstrating that there was countywide prejudice against him.

 A change of venue should be granted only when it is clearly shown that a fair trial is not likely to be had in the county. *Bell v. State*, 324 Ark. 258, 920 S.W.2d 821 (1996). This requires a movant to show that there is countywide prejudice against him. *Foster v. State*, 275 Ark. 427, 631 S.W.2d 7 (1982). A defendant is not entitled to jurors who are "totally ignorant of the facts surrounding the case, as long as they can set aside any impression they have formed and render a verdict solely on the evidence at trial." *Rankin v. State*, 329 Ark. 379, 396, 948 S.W.2d 397, 406 (1997) (quoting *Gardner v. State*, 296 Ark. 41, 52, 754 S.W.2d 518, 523 (1988)). The standard of reviewing the denial of a motion for change of venue is whether there was an abuse of discretion by the trial court. *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998).

 In the present case, we cannot say that the trial court abused its discretion in denying the change of venue, especially given that Appellant makes no argument that the jury that was ultimately seated was biased against him. To the contrary, the record demonstrates that the defense voiced its approval of each and every person selected to be seated on his jury. "[T]here can be no error in the denial of a change of venue if an examination of the jury selection shows that an impartial jury was selected and that each juror stated he or she could give the defendant a fair trial and follow the instructions of the court." *Bell*, 324 Ark. at 264, 920 S.W.2d at 824. Accordingly, we affirm on this point.

### VI. Denial of Suppression of Taped Statement

For his last point for reversal, Appellant argues that the trial court erred in denying his motion to suppress a taped conversation between Appellant and a fellow inmate, Charles Rogers. The record reflects that two inmates, Steven Nevels and Charles Rogers, reported to Investigator Dale Arnold that Appellant had made statements to them regarding the murder of his wife. As a result of the inmates' information, Arnold asked Rogers if he would be willing to wear a body mike in his cell. Rogers agreed. According to Arnold, he instructed Rogers not to raise the subject of the murder,

but to converse about it if Appellant raised the subject. The taped conversation occurred on June 7, 1996.

 The record reflects that the tape was never used at trial. The record also reflects that the trial testimony of Nevels and Rogers did not concern any statement Appellant made after June 5, 1996. Accordingly, Appellant cannot demonstrate prejudice. This court will not reverse a trial court's ruling denying suppression of a taped statement where that statement was not used against the appellant at trial. *See Simpson v. State*, 339 Ark. 467, 6 S.W.3d 104 (1999); *Hayes v. State*, 274 Ark. 440, 625 S.W.2d 498 (1981). Prejudice is not presumed, and this court will not reverse absent a showing of prejudice. *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998). We thus affirm on this point.

*VII. Rule 4-3(h) Compliance*

In accordance with Rule 4-3(h) of the Arkansas Supreme Court Rules, the record has been reviewed for adverse rulings objected to by Appellant but not argued on appeal, and no such reversible errors were found. For the aforementioned reasons, the judgment of conviction is affirmed.