Bruce Edward LEAKS *v.* STATE of Arkansas

CR 00-895 45 S.W.3d 363

Supreme Court of Arkansas
Opinion delivered June 7, 2001

*Kent McLemore*, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. A jury convicted appellant Bruce Edward Leaks of first-degree murder in the January 7, 1997, shooting death of William Earl Littlejohn, and sentenced him to forty-five years in prison. We take jurisdiction of this appeal pursuant to Ark. Sup. Ct. R. 1-2(a)(7), as this is Leaks's second appeal. We reversed his earlier conviction in *Leaks v. State*, 339 Ark. 348, 5 S.W.3d 448 (1999), on the basis of the prosecutor's improper and prejudicial closing argument. As his sole point for reversal in this appeal, Leaks contends that there was insufficient evidence to support the guilty verdict.

At the close of the State's case, Leaks moved for a directed verdict on the charge of first-degree murder, asserting that the State had not proven that he had the intent to kill Littlejohn or that he had committed an underlying felony which would give rise to a

charge of felony murder. Leaks's motion was denied at that time, but when he renewed it after resting his defense, the trial court granted the motion only with respect to felony murder.

■ ■ A directed-verdict motion is a challenge to the sufficiency of the evidence. *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000). The test for determining sufficiency of the evidence is whether there is substantial evidence to support the verdict. On appeal, we will review the evidence in the light most favorable to the State and sustain the conviction if there is any substantial evidence to support the verdict. Only evidence supporting the verdict will be considered. *Id.*; *Copeland v. State*, 343 Ark. 327, 37 S.W.3d 191 (2001).

On appeal, Leaks contends that the evidence adduced at trial was insufficient to convict him of first-degree murder; in particular, he asserts that the evidence of "purposeful conduct" was not substantial. Leaks argues that the proof came closer to that necessary to reach a conviction for second-degree murder.[1] In support of his argument, he cites *Spann v. State*, 328 Ark. 509, 944 S.W.2d 537 (1997). There, David Spann argued that he should have been convicted of manslaughter, not first-degree murder, where the facts showed that he had been involved in a heated argument with the victim immediately prior to the killing. The court wrote that while "there was proof of intense anger on the part of Spann . . . [,] [t]here was no proof of provocation in the form of physical fighting, a threat, or a brandished weapon." *Id.* at 515. Leaks points out that he believed Littlejohn was reaching for a weapon just prior to the shooting, and he urges the court to conclude that Littlejohn's conduct rises above the threshold outlined in *Spann*, in that it constituted "physical fighting, a threat, or a brandished weapon."

■ We do not consider this alleged "provocation," however, as we need only consider the evidence which supports the guilty verdict. *Terrell v. State*, 342 Ark. 208, 27 S.W.3d 423 (2000). A person commits first-degree murder if, "[w]ith a purpose of causing the death of another person, he causes the death of another person." Ark. Code Ann. § 5-10-102(a)(2) (Repl. 1997). According to Ark. Code Ann. § 5-2-202 (Repl. 1997), "[a] person acts purposely with respect to his conduct or a result thereof when it is his

---

[1] "A person commits murder in the second degree if: (1) [h]e knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or (2) [w]ith the purpose of causing serious physical injury to another person, he causes the death of any person." Ark. Code Ann. § 5-10-103 (Repl. 1997).

conscious object to engage in conduct of that nature or to cause such a result." A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *See, e. g., Terrell, supra; Steggall v. State*, 340 Ark. 184, 194, 8 S.W.3d 538, 545 (2000). Furthermore, the intent necessary for first-degree murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Williams v. State*, 304 Ark. 509, 804 S.W.2d 346 (1991); *Garza v. State*, 293 Ark. 175, 735 S.W.2d 702 (1987).

The evidence introduced at trial showed the following sequence of events. William Earl Littlejohn had been living at the home of Sylvester Leaks, Bruce Leaks's brother, for about a week or two before the shooting. On January 7, George Cheatham, a friend of Leaks, informed Leaks that Littlejohn was at Sylvester's house letting some friends wash clothes there. Upon hearing this, Leaks took a revolver from the trunk of the car belonging to his girl-friend, Shirley Williams, loaded the gun, and went to Sylvester's house to confront Littlejohn. When Leaks arrived at Sylvester's house, he asked Littlejohn about the women doing laundry. After a short, hostile exchange, Littlejohn began to fasten the door, but Leaks grabbed his arm. According to Leaks, Littlejohn then slapped Leaks. At that point, standing about four feet away from Littlejohn, Leaks took out the pistol and shot him. Littlejohn ran to a back bedroom, clutching his chest, where he told Leaks's nephew, James Leaks, "Bob shot me, go call the police." Littlejohn then collapsed on James's bed; he died before medical help could arrive.

After shooting Littlejohn, Leaks returned to his house, where he hid the gun in a drawer and put on his pajamas to pretend that he had been at home all the time because he did not want anyone to know he had left the house. The next day, he returned the gun to the trunk of his girlfriend's car and threw the spent round away. Leaks initially denied any involvement in the shooting, telling both George Cheatham and the police that he did not know anything about the incident. However, in the statement he later gave to the police, he admitted to the shooting, but claimed it had not been his intention to shoot Littlejohn.

At trial, Dr. Frank Peretti, the associate medical examiner for the State, testified that the bullet that killed Littlejohn entered his chest between his ribs and pierced his heart and left lung. Littlejohn essentially bled to death internally from this wound, according to Dr. Peretti. Ronald Andrejack, a firearms tool mark examiner with

the Arkansas State Crime Lab, testified that the bullet that killed Littlejohn was fired from the .38 revolver retrieved from the trunk of Shirley Williams's car. We conclude that these facts were sufficient to support the conviction for first-degree murder.

In *Williams, supra,* the court held that it was reasonable to conclude that when Williams fired shots from a .45 caliber pistol into the victim's abdomen and back, from a distance of a few feet, he possessed a purposeful intent to kill. *Id.* at 513. Similarly, the court affirmed a first-degree murder conviction in *Walker v. State,* 324 Ark. 106, 918 S.W.2d 172 (1996). There, Walker was shooting a gun in the victim's home. When the victim, Johnny Jones, asked Walker to stop or to take the gun outside, Walker became angry and confronted Jones, firing one shot at close range into Jones's forehead. This court held that this was "substantial evidence, both direct and circumstantial, for the jury to conclude that it was Walker's conscious objective to engage in the conduct which resulted in the death of Jones." *Id.* at 110.

 It is axiomatic that one is presumed to intend the natural and probable consequences of his actions. *Smith v. State,* 337 Ark. 239, 988 S.W.2d 492 (1999); *Walker, supra; Akbar v. State,* 315 Ark. 627, 869 S.W.2d 706 (1994). Here, Leaks fired a .38 revolver into Littlejohn's chest from a distance of only a few feet away. In addition, after shooting the victim, Leaks returned home, put on his pajamas and went to bed in an effort to conceal his crime; further, he lied to friends and to the police about his involvement in the killing. This court has held that lying about a crime can indicate a consciousness of guilt, *see Brenk v. State,* 311 Ark. 579, 847 S.W.2d 1 (1993), and a jury may properly consider an attempt to cover up one's connection to a crime as proof of a purposeful mental state. *See Terrell,* 342 Ark. at 212; *Thompson v. State,* 338 Ark. 564, 999 S.W.2d 192 (1999). Circumstantial evidence of a culpable mental state may constitute substantial evidence to sustain a guilty verdict. *Terrell,* 342 Ark. at 212 (citing *Steggall v. State,* 340 Ark. 184, 8 S.W.3d 538 (2000)). The facts set out above presented sufficient evidence from which the jury could have concluded that Leaks was guilty of first-degree murder. We therefore affirm.