

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR–16–914

MELISSA DIANE STEARNS

APPELLANT

V.

STATE OF ARKANSAS

APPELLEE

**Opinion Delivered:** September 20, 2017

APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION
[NO. 60CR-14-722]

HONORABLE BARRY SIMS, JUDGE

AFFIRMED

## MIKE MURPHY, Judge

A Pulaski County jury convicted appellant Melissa Stearns of first-degree murder in the January 24, 2014 stabbing death of Herschel Johnson. She was sentenced to thirty-five years in the Arkansas Department of Correction. Stearns's sole argument on appeal challenges the sufficiency of the evidence supporting her conviction. We affirm.

Jimmy James testified that on the day of the stabbing, he was at the mobile home where Stearns had been living with Johnson. He explained that Stearns and Johnson had been arguing and that they had asked him to take Stearns to the store, which he did. Upon their return, Stearns and Johnson continued to argue. James testified that he went to use the bathroom and that by the time he came out, Stearns had stabbed Johnson. He explained that he heard Johnson call Stearns a "fucking whore" and had told her to get out. James said he could hear Stearns go to the kitchen and run back to Johnson saying, "Call me a whore again. I dare you. I dare you." After hearing a scuffle, James came out of the bathroom and

saw the blood on the back of Johnson's shirt. He explained that it appeared Stearns had run out of the room to get rid of the weapon and that she had come back asking, "What happened here?"

James explained that Johnson was coherent and said he was going to call the police and "put her in jail," so James decided to go home. Stearns followed James to his car and demanded he take her to her friend Josh Strong's house. James did so. After dropping Stearns off, James stopped by Johnson's home to check on him. According to James, about three minutes had elapsed. He testified that when he arrived, Johnson was intoxicated, but the bleeding had stopped and the wound "didn't look life threatening." Johnson told him he would get another beer and then call the police. James had a warrant pending, so he did not want to be around when the police arrived. Ultimately, the following day, Johnson's brother, Roger Johnson, found him deceased in his bed and called 911.

Christy Hudson, who lived in the same community, went to check on Johnson at his home when she was told that paramedics were outside his mobile home. The detective asked Hudson if she knew where Stearns was. Suspecting that Stearns was at Strong's home, Hudson went to get her. When Hudson found Stearns and told her Johnson had passed away. Stearns responded, "Oh, my God, who would hurt Herschel?" Hudson took Stearns back to the scene so she could talk to the detective.

Strong explained that Stearns was living with Johnson because she did not have a place to stay at the time and that their roommate relationship was platonic. When Stearns went to him after the incident she was hysterical, and Strong said that Stearns told him that she had "nicked" Johnson with a knife and that she was worried she had hurt him. Strong

said that Stearns did not say anything about Johnson being violent toward her. The State then introduced a text Stearns had sent to Strong on the day of the incident that said, "About to kill this motherfucker."

Tiffany Smith, who was incarcerated with Stearns at the Pulaski County jail, testified that Stearns opened up to her about the stabbing. Smith explained that Stearns first told her that she had been cutting up apples in the kitchen and that Johnson had fallen on the knife. Eventually, Stearns told Smith that her biggest regret was not throwing the knife away. Instead, Stearns had washed off the blood and hidden the knife under the refrigerator. Smith testified that Stearns also regretted that she had not changed Johnson's shirt before she put a jacket on him after the incident. Lastly, Smith explained that Stearns had asked her to call Strong and tell him to delete all his text messages from Stearns, specifically, the one that said, "About to kill this motherfucker."

Detective Jeff Allison testified that Stearns originally denied being at the home when Johnson got hurt. She then changed her story but said that she had "barely swung" the knife at Johnson and that he had been so mean toward her. She told Allison it was never her intention to hurt him; she just "wanted him to take [her] more serious."

Dr. Jennifer Forsythe performed the autopsy on Johnson. She testified that the wound was consistent with the size of the knife found under the refrigerator. Dr. Forsythe explained that the knife struck Johnson's aorta. She said that the knife went halfway through his body and that the length of the wound was 1.8 centimeters. She testified that the stab wound was "100 percent cause of death" and that the wound was "not an insignificant nicking of the body"; rather, it was a "fatal stab wound."

Stearns contends that the incident was an accident and not intentional, and she filed this timely appeal.

On appeal, a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *See Reynolds v. State*, 2016 Ark. 214, at 3, 492 S.W.3d 491, 494. This court views the evidence in the light most favorable to the State and affirms if there is substantial evidence to support the verdict. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* This court does not weigh the evidence presented at trial or assess the credibility of the witnesses, because those are matters for the fact-finder. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* Only evidence supporting the verdict will be considered. *Leaks v. State*, 345 Ark. 182, 185, 45 S.W.3d 363, 365 (2001).

On appeal, Stearns contends that the evidence adduced at trial was insufficient to convict her of first-degree murder; specifically, she asserts that the evidence of "purposeful conduct" was not substantial. Stearns argues that the proof came closer to that necessary to reach a conviction for second-degree murder or manslaughter.[1]

---

[1]A person commits murder in the second degree if the person knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-103. A person commits manslaughter if the person recklessly causes the death of another person. Ark. Code Ann. § 5-10-104.

A person commits murder in the first degree if, with the purpose of causing the death of another person, the person causes the death of another person. Ark. Code Ann. § 5-10-102(a)(2). A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202. A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *See Leaks*, *345 Ark.* at 182, 45 S.W.3d at 365. It is axiomatic that one is presumed to intend the natural and probable consequences of his or her actions. *Thompson v. State*, 338 Ark. 564, 569, 999 S.W.2d 192, 195 (1999). Furthermore, the intent necessary for first-degree murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Id.*

Stearns covered up and lied about her involvement in the murder. After stabbing Johnson, Stearns immediately started trying to cover up evidence when she hid the knife and returned asking James, "What happened here?" Stearns also lied to the police during her first interview about her involvement in the killing. This court has held that lying about a crime can indicate a consciousness of guilt, and a jury may properly consider an attempt to cover up one's connection to a crime as proof of a purposeful mental state. *Leaks*, 345 Ark. at 186, 45 S.W.3d at 366. Furthermore, the jury could infer that Stearns was angry with Johnson, as James had testified to their arguing immediately prior to the stabbing. Contrary to Stearns's statement to police that she "barely swung" the knife, the medical examiner testified that the blade had gone halfway through Johnson's body. These facts point to purposeful conduct.

5

Under these circumstances, we hold that the jury was presented with substantial evidence of Stearns's intent, and we affirm.

Affirmed.

VIRDEN and GLOVER, JJ., agree.

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Ass't Att'y Gen., for appellee.