

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-13-144

| | |
|---|---|
| | **Opinion Delivered** October 9, 2013 |
| JON AARON SHATWELL | APPEAL FROM THE BOONE COUNTY CIRCUIT COURT |
| APPELLANT | [NO. CR-12-95-4] |
| V. | HONORABLE GORDON WEBB JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

**BRANDON J. HARRISON, Judge**

Savanna Dickinson's life ended on a mid-November night in 2011. Harrison police officers responded to a call that Savanna had taken her own life in an apartment she shared with Jon Shatwell. With the help of the fire department, police officers entered the locked apartment. They found Savanna, alone, slumped on a couch by the front door. Her face and head were encased in blood. She was dead. A .45-caliber (1911 style) semi-automatic pistol lay near her right hand.

Savanna had been shot between her eyes. There was a live round of ammunition on the living-room floor and a spent casing next to the coffee table by the couch. Law enforcement secured the scene and began investigating Savanna's death.

Shatwell became a person of interest because he and Savanna had fought at a party earlier the same evening over a personal matter. Not long after Savanna's death, Shatwell

appeared at his mother's house; he had blood on his jacket, hands, and face. He told his mother that Savanna had shot herself in the head, so his mother called the police to report what happened. Shatwell gave a voluntary statement to the police shortly after his mother called them. According to Shatwell's first account to police, he found Savanna in the living room holding a gun and, despite his efforts to dissuade her, she shot herself. Shatwell said that he remained with Savanna, holding her for about ten minutes before going to his mother's house. He told the suicide story to family and friends from November 2011 until April 2012, when the police interviewed him a second time; that's when a different story about the cause of Savanna's death emerged.

In his second interview, the police confronted Shatwell with forensic evidence and told him that they believed suicide was an unlikely cause of Savanna's death. Shatwell then told the police that he had accidently shot Savanna. The State of Arkansas subsequently charged Shatwell with committing murder in the first degree, tampering with physical evidence, and using a firearm while committing a felony (sentencing enhancement). In October 2012 he was tried before a Boone County jury.

The jury convicted Shatwell of purposefully killing Savanna. It also found that Shatwell had used a firearm while committing a felony and tampered with evidence. The circuit court sentenced Shatwell to a total of 672 months' (56 years) imprisonment in the Arkansas Department of Correction. Shatwell appealed his conviction and here argues the following points:

- The circuit court abused its discretion by denying a motion for a mistrial after his former girlfriend, Melissa Weaver, testified that he physically abused her.



- The circuit court erred when it denied his motion in limine to exclude evidence of prior bad acts under Ark. R. Evid. 404(b) because Weaver testified improperly that he had threatened her with the same gun he used to kill Savanna Dickinson, and her testimony was solely offered to show that he would use gun violence against a subsequent girlfriend.

- The circuit court erred by concluding that the probative value of Weaver's gun-related testimony outweighed its prejudicial effect.

- The circuit court should have granted Shatwell's motion for a directed verdict on the first-degree murder charge.

- The circuit court should have granted Shatwell's motion for a directed verdict on the tampering charge.

We treat motions for directed verdict as challenges to the sufficiency of the evidence. *Tillman v. State*, 364 Ark. 143, 217 S.W.3d 773 (2005). Shatwell's two insufficient-evidence arguments come first. *Boldin v. State*, 373 Ark. 295, 297, 283 S.W.3d 565, 567 (2008).

## I. *The First-Degree Murder Conviction*

Shatwell committed first-degree murder if, with a purpose of causing Savanna's death, he caused Savanna's death. Ark. Code Ann. § 5-10-102(a)(2) (Repl. 2006). In reviewing Shatwell's challenge to the sufficiency of the State's evidence, we ask whether the verdict is supported by substantial evidence; it does not matter whether the evidence is direct, circumstantial, or some combination of the two. *Dunn v. State*, 371 Ark. 140, 264 S.W.3d 504 (2007). For circumstantial evidence to be substantial, the evidence must exclude every reasonable hypothesis other than the accused's guilt. The jury gets to decide whether the circumstantial evidence excludes every hypothesis consistent with innocence. Substantial evidence forces or compels a conclusion one way or the other so

that the jury does not have to speculate to reach a decision. We will not overturn its determination unless the verdict required speculation and conjecture. The jury also weighs the evidence and judges witness credibility. *Id.*

A criminal defendant's state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Leaks v. State*, 345 Ark. 182, 45 S.W.3d 363 (2001). The existence of criminal intent or purpose is a matter for the jury to determine when criminal intent may be reasonably inferred from the evidence. *McClard v. State*, 2012 Ark. App. 573.

In his directed-verdict motions, Shatwell argued that the State failed to prove that he acted with the intent to purposely cause Savanna's death. Shatwell was alone in his apartment with Savanna the same night that the two had argued and Savanna was shot. Shatwell admitted at trial that he was holding a loaded .45—with his finger on the trigger—when the gun fired. Detective Schaeffer testified that a safety release had to be disengaged at the same time the trigger was pulled for the gun to fire. The spray of gunpowder across Savanna's forehead indicated a close-range shooting. The State's forensic expert, Adam Craig, said the gun was three feet or less from Savanna's forehead when it discharged. Craig also said that the bullet's path through Savanna's head was "suspicious" and "atypical for a suicide." Detective Schaefer told the jury how the blood patterns on the gun, and swiping patterns on Savanna's body, did not match Shatwell's suicide story. Shatwell's fingerprints were on the gun's magazine.

Shatwell also changed his story about what happened inside the apartment the night Savanna died. The jury could properly consider Shatwell's vacillating stories as proof of a

purposeful mental state. *Leaks v. State*, 345 Ark. 182, 186, 45 S.W.3d 363, 366 (2001). The jury could also infer Shatwell's intent from the circumstances surrounding the shooting. *See Thompson v. State*, 338 Ark. 564, 999 S.W.2d 192 (1999) (the natural and probable consequence of putting a pistol against another person's neck and firing the gun is the death of the victim); *Walker v. State*, 324 Ark. 106, 918 S.W.2d 172 (1996) (gun fired at close range to victim's head can be substantial evidence of defendant's purposeful intent). The jury was ultimately allowed to accept or reject Shatwell's story that he accidentally killed Savanna. *See Williamson v. State*, 2013 Ark. 347, at 6.

The jury also heard testimony from a woman who had dated Shatwell before he reunited with Savanna. Her name is Melissa Weaver, and she testified that, about one month before Savanna died, she had broken up with Shatwell. But before she did so, he had held a gun to her forehead and threatened her. Weaver's testimony, which we discuss in more detail below, is additional evidence that the jury heard when judging Shatwell's accidental-shooting story.

The jury's guilty verdict on the first-degree murder charge was based on substantial evidence. We affirm it.

## II. *The Tampering-with-Evidence Conviction*

Arkansas Code Annotated section 5-53-111(a) (Repl. 2005) provides that

> [a] person commits the offense of tampering with physical evidence if he or she alters, destroys, suppresses, removes, or conceals any record, document, or thing with the purpose of impairing its verity, legibility, or availability in any official proceeding or investigation.

Shatwell argues that the State did not prove that he altered or removed anything from the crime scene with the purpose of impairing the investigation. The same standard-of-

review points we applied to Shatwell's challenge of his murder conviction apply here. We also reach the same result: the jury's conviction on this charge was supported by substantial evidence, so it is affirmed.

This court and our supreme court have interpreted section 5-53-111(a) in cases where a defendant removes or conceals a murder weapon. *Puckett v. State*, 328 Ark. 355, 358, 944 S.W.2d 111, 113 (1997); *Scott v. State*, 1 Ark. App. 207, 210, 614 S.W.2d 239, 241 (1981). Here, there was no evidence that Shatwell totally removed the gun from a crime scene or concealed its presence from potential investigators. But having read the plain words of the statute—and being mindful that criminal statutes must be construed narrowly in favor of a defendant—we hold that the State produced substantial evidence that Shatwell altered the position of Savanna's body and the murder weapon with the purpose of impairing the Harrison Police Department's investigation into Savanna's death. *Puckett*, 328 Ark. at 358, 944 S.W.2d at 113.

Shatwell told investigators that Savanna had fallen on the floor after she shot herself and that he picked her up and placed her on the couch. Based on the placement of Savanna's body and the location of the gun beside her, Detective Schaefer told the jury that he thought Shatwell manipulated the crime scene to make it look like Savanna had committed suicide. The detective said specifically that Savanna's body had been moved at least 5 to 12 inches from where it lay originally. The State also presented evidence that the blood-swiping patterns on Savanna's head and arms indicated that she was found in a different position from where she was shot.

We affirm Shatwell's conviction under section 5-53-111(a).

SLIP OPINION



III. *Prior Bad-Acts Evidence*

We collapse Shatwell's first three points on appeal into this question: did the circuit court abuse its discretion and prejudice Shatwell's case by admitting Melissa Weaver's testimony? Some background is needed to understand the related points that touch on why we hold that the jury did not receive inadmissible and prejudicial bad-acts evidence about how Shatwell treated Weaver, a former girlfriend.

Shatwell filed a pretrial motion in limine asking the court to exclude evidence of prior bad acts, including "threats with the use of a gun both to the victim and other persons." Weaver testified at the second pretrial hearing on Shatwell's motion. She told the court about her volatile relationship with Shatwell and how he had threatened her with his gun on more than one occasion. She also said that Shatwell's abuse permanently damaged her neck.

Weaver detailed several gun-related incidents with Shatwell. Weaver also provided a detailed description of the same gun that Shatwell admitted getting from his grandfather and with which he claimed to have accidentally shot Savanna. Weaver told the circuit court that, on one night, Shatwell forced her to her knees and placed his gun to the back of her head. Another time Shatwell became upset while they were watching a movie and fired the gun while inside the bedroom. He later apologized, claiming an accidental discharge. On cross-examination, Weaver said that she did not know if it was an accident but that is what she told the police.

According to Weaver, another gun-related incident occurred within two months of Savanna's death, after Weaver and Shatwell had argued for hours. The fight got

"physical," Weaver testified, and Shatwell told her to get on her knees; he then stood directly in front of her and put his gun to her forehead. Weaver testified that she was scared but looked Shatwell in the eyes and said, "They're going to know you did this." He then reportedly said, "You have so many problems [that] they're going to think it's a suicide." Shatwell then set the gun down, according to Weaver, and she quickly hid it from him.

Shatwell argued to the circuit court that Weaver's testimony was impermissible character evidence meant only to portray him as a "bad person" and that "he is supposed to be tried on the merits of this case, not for allegedly bad stuff that happened in the past." He contended that the incidents Weaver described—and the physical evidence at the crime scene—were too dissimilar, so Weaver's testimony was irrelevant. The State argued that the past incidents with Weaver were independently relevant to show that Savanna's death was not an accident or mistake and that the past acts tended to prove Shatwell's criminal intent.

The court seems to have orally granted in part and denied in part Shatwell's motion to exclude Weaver's testimony. The court's ruling was not crystal clear, but the record as a whole shows that the parties understood that Weaver could testify about how Shatwell had threatened her with his gun during their relationship; but she could not testify about other physical abuse. The court also issued posttrial written orders denying Shatwell's motion in limine and memorializing its oral ruling. We have not considered those orders because they were filed after the jury returned its verdict, meaning the parties did not have

the benefit of the written orders on the limine issue before the jury decided the case, just the oral rulings.

After the trial began, but before Weaver told the jury her story, Shatwell again objected to her testimony, citing Ark. R. Evid. 404(b) and 403. The court permitted Weaver to testify. After establishing that Weaver had a past romantic relationship with Shatwell, and in the jury's presence, the prosecuting attorney asked the following questions on direct examination:

PROSECUTOR:     And when [was] your relationship terminated?

WEAVER:     It was—it was October?

PROSECUTOR:     Okay, of 2011?

WEAVER:     Yes, ma'am.

PROSECUTOR:     So about a month before Savanna was killed?

WEAVER:     Yes, ma'am[.]

PROSECUTOR:     Describe your relationship with Jon, was it a good relationship, bad, tell the Court and the jury about that?

WEAVER:     The relationship—just the relationship standings.

PROSECUTOR:     Yes?

WEAVER:     It was good. There was a lot of—there wasn't any problems at all in the beginning. And then the exact opposite when the conditions on a regular basis until the end of—

PROSECUTOR:     All right. Tell the jury what you mean by things toward the end getting bad?

WEAVER:     They started to become bad. It started with a lot of different variations of physical abuse.

DEFENSE:     Your Honor, may we approach?

| COURT: | You may. |
|---|---|
| DEFENSE: | Your honor at this point in time, I'm going to ask for a mistrial because she is going into exactly what I filed the motion in limine about, about the prior bad acts. This Court ruled that she was not supposed to be talking about any acts of violence other than this deal with the gun. Now she is saying there was physical abuse. |
| PROSECUTOR: | I can ask her to define that, Your Honor? |
| COURT: | I think—I think all she said was verbal abuse, the Court is going to allow that. That's not a prior bad act under the law. The Court's finding— |
| DEFENSE: | I just want to make sure— |
| COURT: | I understand what you're saying. You know, I am assuming the State has cautioned the witness about what can be talked about, so that's what we're going to— |
| DEFENSE: | Thank you, Your Honor. |

The remainder of Weaver's trial testimony mirrored that which she gave the court during the pretrial hearing on Shatwell's motion in limine. Weaver did not subsequently mention physical abuse beyond the gun-related incidents.

Shatwell argues here that the court erred by denying his motion for mistrial and allowing the State to present reputation and other bad-acts evidence. He specifically argues that Weaver's testimony was so prejudicial that a new trial is due. The State argues that Shatwell failed to preserve his arguments on appeal, or alternatively, that the court did not abuse its discretion in admitting the testimony because any prejudice to Shatwell did not substantially outweigh the probative value of Weaver's testimony, which was to help establish the required mental state.

SLIP OPINION

We review the admissibility of Weaver's testimony under an abuse-of-discretion standard. *Flanery v. State*, 362 Ark. 311, 314, 208 S.W.3d 187, 189 (2005). The circuit court also has wide discretion in granting or denying a motion for mistrial, and absent an abuse of that discretion, the court's decision will not be overturned on appeal. *Smith v. State*, 354 Ark. 226, 243, 118 S.W.3d 542, 552 (2003).

Character evidence is not admissible during the State's case in chief if its only purpose is to suggest that a defendant is more likely to have committed the charged crime. Ark. R. Evid. 404(b) (2012). But a defendant's prior bad conduct is admissible evidence if it tends to establish a specific point related to the current charge. *Id.* The "something specific" may include—but is not necessarily limited to—motive, intent, absence of mistake, identity, or common plan. *Id.* If the prior bad act is independently relevant then the State may use it as part of its case. *Vance v. State*, 2011 Ark. 243, at 8, 383 S.W.3d 325, 339–40. For example, any circumstance that links a defendant to the crime, or raises a possible motive for the crime, is independently relevant and admissible under Rule 404(b). *Id.*

But a 404(b) analysis is only half the process. Even if evidence of other crimes or bad acts is admissible under Rule 404(b), the court must then, under Rule 403, weigh the evidence's probative value against its prejudicial effect. Considerable leeway is given to the circuit courts when determining if the circumstances of prior acts or crimes, and the crimes at hand, are sufficiently similar to admit them under Rules 404(b) and 403.

Weaver testified that Shatwell told her, "You have so many problems, they're going to think it's a suicide." She accurately described the gun that was used in the

11

murder, which Shatwell possessed, and recounted an incident where he put that same gun to her forehead. Weaver's testimony was relevant and probative to Shatwell's murder, tampering, and firearm charges because it concerned his defense that the shooting was accidental.

The most recent gun incident between Weaver and Shatwell occurred a month or two before Savanna's death. The close proximity of time between the Shatwell/Weaver incident and Savanna's death also weighs in favor of admissibility. *See Smith v. State*, 90 Ark. App. 261, 268, 205 S.W.3d 173, 178 (2005). Weaver's testimony is also sufficiently probative because it has a tendency to reveal Shatwell's mental state when agitated with or by a girlfriend—that he might intentionally point a loaded pistol at or near a girlfriend and threaten to fire it. That Shatwell was arguably familiar with the gun, had placed it to a previous girlfriend's forehead under similar circumstances as this case presented and not fired it, was highly relevant to the State's effort to prove that Savanna was purposely, not accidentally, shot. *See Stevenson v. State*, 2013 Ark. 100, at 12. Simply put, the prior acts admitted in this case were similar enough to the current alleged unlawful conduct to be admitted under 404(b) and 403.

Shatwell relies heavily on *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006) for reversal on this point. There, our supreme court reversed a murder conviction in a death-penalty case and remanded for a new trial because of bad-act testimony that was erroneously admitted. The bad-act testimony portrayed the defendant as a "controlling abusive father." *Id.* at 492–501, 231 S.W.3d at 650–56. The supreme court found that the testimony was related to the defendant's credibility but was not independently relevant

to whether he murdered his neighbors. *Id*. at 497, 231 S.W.3d at 653. Unlike the testimony in *Green*, Weaver's testimony was independently relevant to two material issues in the case: Shatwell's mental state and whether an accidental shooting had occurred.

The circuit court did not abuse its discretion in denying Shatwell the drastic remedy of a mistrial just because Weaver said the words "physical abuse" when testifying at trial. The State argues that Shatwell's mistrial motion is not preserved because he failed to tell the court that it had misunderstood Weaver's testimony and because Shatwell failed to request an admonition to the jury regarding physical abuse. That argument does not square with the caselaw in point; Shatwell properly preserved his argument that Weaver crossed the line to his legal detriment. *See Russell v. State*, 2013 Ark. 369, at 7 (a specific motion is required); *Anderson v. State*, 357 Ark. 180, 213, 163 S.W.3d 333, 353 (2004) (defendant must obtain a ruling from the circuit court on a mistrial motion when it appeared that the circuit court's previous in limine ruling favoring the defendant was violated by the State).

We agree that the circuit court misspoke when it said that Weaver mentioned "verbal abuse" while testifying before the jury. Weaver did say "physical abuse." But no reversible error occurred during the court's handling of Weaver's trial testimony. Weaver never testified about specific acts of violence that were unrelated to the gun. And as soon as she mentioned the words physical abuse, Shatwell's lawyer, alert to the problem, objected. Weaver did not subsequently speak of inadmissible past physical abuse after the court's bench conference. Shatwell has not demonstrated "an error so prejudicial that justice could not be served by continuing the trial, or that the fundamental fairness of the

13



trial itself has been manifestly affected." *Tate v. State*, 367 Ark. 576, 580–81, 242 S.W.3d 254, 259 (2006).

We affirm Shatwell's convictions in all respects.

Affirmed.

WYNNE and BROWN, JJ., agree.

*Rebekah J. Kennedy*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Eileen W. Harrison*, Ass't Att'y Gen., for appellee.