
# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-13-296

| | |
|---|---|
| | **Opinion Delivered** December 4, 2013 |
| BOBBY JOE SINGLETARY<br>APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT [NO. G-CR-2009-26] |
| V. | |
| | HONORABLE JAMES O. COX, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant Bobby Joe Singletary appeals the revocation of his suspended imposition of sentence by the Sebastian County Circuit Court, for which he was sentenced to seventy-two months in the Arkansas Department of Correction, with an additional nine years suspended, and an order to attend parenting classes upon release. He argues that there is insufficient evidence to support the circuit court's finding that he violated the terms and conditions of his suspended sentence. We affirm.

On August 5, 2009, appellant pleaded guilty to possession of marijuana, second offense, and possession of drug paraphernalia and was given a sixty-month suspended imposition of sentence. Among the conditions of his suspended sentence was that he not violate any federal, state, or municipal law. The State filed a petition to revoke appellant's suspended sentence on December 13, 2012, asserting that appellant had committed the

SLIP OPINION

offenses of battery in the first degree and domestic battery in the third degree by inflicting serious physical injuries to his then four-month-old son.

A hearing was held on February 6, and February 13–14, 2013. After the defense rested, appellant's counsel argued that the State did not prove that appellant intended to cause battery in the first degree and that hugging a child or not being a careful enough father is not sufficient to support a conviction on that charge. The circuit court ruled that the State proved that appellant recklessly caused the injuries as required to support a conviction for battery in the third degree. The circuit court sentenced appellant pursuant to a sentencing order filed February 21, 2013. Appellant filed a timely notice of appeal on March 4, 2013.

In order to revoke probation or a suspended imposition of sentence, the trial court must find by a preponderance of the evidence that the defendant inexcusably violated a condition of the suspension or probation. Ark. Code Ann. § 16-93-308(d) (Supp. 2011). On appellate review, the circuit court's findings will be upheld unless they are clearly against the preponderance of the evidence. *Mars v. State*, 2013 Ark. App. 173. In determining whether there is substantial evidence to support a verdict, an appellate court reviews the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Williamson v. State*, 2013 Ark. 347, __ S.W.3d __.

A criminal defendant's intent or state of mind is rarely capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *See Inthisone v. State*, 2013 Ark. App. 482. Because of the difficulty in ascertaining a defendant's intent, a presumption exists that a person intends the natural and probable consequences of his or her

SLIP OPINION

acts. *Barron-Gonzalez v. State*, 2013 Ark. App. 120, __ S.W.3d __. The finder of fact resolves any conflicts in testimony and determines the credibility of the witnesses, and its conclusion on credibility is binding on the appellate court. *Id*.

Although it was alleged that appellant committed domestic battery in the first degree, pursuant to Arkansas Code Annotated section 5-26-303 (Supp. 2011), it was found by a preponderance of the evidence that he committed domestic battery in the third degree, pursuant to Arkansas Code Annotated section 5-26-305 (Supp. 2011), which states:

> (a) A person commits domestic battering in the third degree if:
> (1) With the purpose of causing physical injury to a family or household member, the person causes physical injury to a family or household member;
> (2) The person recklessly causes physical injury to a family or household member;
> (3) The person negligently causes physical injury to a family or household member by means of a deadly weapon; or
> (4) The person purposely causes stupor, unconsciousness, or physical or mental impairment or injury to a family or household member by administering to the family or household member, without the family or household member's consent, any drug or other substance.

Battery in the third degree either requires the intent of "purpose" to cause or the intent to "recklessly" cause physical injury to a family member. The term "recklessly" means that a person acts recklessly with respect to attendant circumstances or a result of his or her conduct when the person consciously disregards a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur, or that the risk must be of a nature and degree that disregard of the risk constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation. Ark. Code Ann. § 5-2-202(3) (Repl. 2006). Pursuant to section 5-13-203 (Repl. 2006), third-degree battery is a battery that results in "physical injury," which means the impairment of physical condition; infliction

3

of substantial pain; or the infliction of bruising, swelling, or a visible mark associated with physical trauma. Ark. Code Ann. § 5-1-102(14) (Repl. 2011); *Bruner v. State*, 2013 Ark. 68, __ S.W.3d __.

Appellant argues that the circuit court was forced to speculate that he committed the alleged violations listed in the petition because there was no evidence presented to support the allegation of battery in the third degree. He submits that no one saw him actually engage in behavior that specifically caused the alleged injuries to the child and that the only evidence presented that might be argued as such was that he tossed the child into the air and caught him. Appellant claims that no evidence was presented by the State to show that he had any awareness that he was engaging in conduct that would cause the child to have any broken bones.

Appellant notes that the testimony of the State's various witnesses indicates that he loved and cared for G.S. and that there was nothing presented to show that appellant was ever angry towards G.S. Appellant contends that the circuit court engaged in speculation that he had the requisite mental state to engage in the criminal behavior alleged by the State. He urges that, at most, the State showed that appellant was negligent in his behavior with the child, which is insufficient to meet the crimes alleged.

We disagree. Testimony that supports appellant's conviction includes that of Louisa Moore, the mother of G.S., who testified that she and the appellant are married and have one son, G.S., who was four months old at the time appellant was charged with battery. Ms. Moore explained that on October 29, 2012, she was in a different room when she heard

G.S., who was being watched by the appellant, cry out. Appellant told her that he was trying to place G.S. in the playpen when G.S. stretched out his right arm in front of him and kicked his left leg over, hurting his arm. She checked out the baby and could see nothing wrong, but the child cried for approximately ten-to-fifteen minutes. Concerned because G.S. was only four months old, Ms. Moore called her pediatrician. She testified that, although she did not see any bruising or swelling on the arm, she was concerned because G.S. would not reach for his bottle or toys after the incident.

After visiting the pediatrician and seeing the nurse practitioner the next day, Ms. Moore and appellant took G.S. to Mercy Hospital for x-rays. The x-rays indicated that G.S. had a fracture in his right-upper arm, along with several older, healing fractures in his sixth rib and shoulder blade. At that time, the nurse practitioner notified Ms. Moore and appellant that she was required to report the injury to the child-abuse hotline, which she proceeded to do.

Ms. Moore took G.S. to Arkansas Children's Hospital (ACH) for further evaluation while appellant discussed the incident with Sergeant Sacco from the Sebastian County Sheriff's Office. At ACH, Ms. Moore was informed that, in addition to the injuries discovered at Mercy, G.S. also had healing fractures in his right wrist and left-upper leg. Ms. Moore testified that appellant had called her about the left-leg injury at the time it occurred. He told her that he had been trying to feed G.S. by propping him on some pillows on the sofa when G.S. had dropped his bottle. When appellant got up to retrieve it, G.S. stuck his leg out and appellant accidently sat on it. Ms. Moore stated that she did not consult a doctor



following this injury because she feared police involvement, which might result in G.S.'s removal from her care.

According to Ms. Moore, appellant did not have an explanation for the other injuries, but she had often admonished him for being too rough with G.S. and hugging him too tightly. She testified that appellant's response had been that, "baby or not, [G.S.] was a boy." Ms. Moore further explained that appellant told her once that G.S. had rolled off of his changing pad and into the wall, which resulted in a busted lip. Ms. Moore testified that appellant also told her he had slipped and fallen while holding G.S., landing on his back with G.S. on his chest. On another occasion appellant claimed that he was giving G.S. a bath when G.S. kicked and fell sideways in the tub, resulting in a bruised cheek.

Other than the incidents while G.S. was in the appellant's care, Ms. Moore was only aware of one other potential cause for his injuries, which was when his babysitter dropped him while he was strapped into his car seat. According to testimony by Dr. Jerry Jones of ACH, this would not have resulted in injury unless the car seat had landed upside down, which was not indicated by the testimony.

Dr. Jones testified that the injuries were inconsistent with appellant's explanations. He testified that he examined the child for suspected child abuse, and a full-skeletal survey showed healing and fresh fractures of the left femur, right humerus, right-sixth rib, and the acromion. Severe squeezing could be a typical mechanism to cause the rib injury. Dr. Jones testified that, based on his exam, he felt the child was a victim of child abuse. Dr. Jones stated that the injury to the shoulder blade was consistent with blunt-force trauma, and could

possibly have been caused by tossing the baby in the air and missing the catch, causing G.S. to hit his shoulder on the ground. Dr. Jones stated that multiple fractures of different ages, especially the shoulder blade and rib fractures, have a high specificity for abuse.

Mary Steele testified that she had been a neighbor of appellant. One time, he brought G.S. over because he was not breathing, and when she asked to see the baby, he said no and held the child tighter, and G.S. finally started breathing. Another time, appellant asked her to look at G.S.'s leg because he had sat on it, but she saw no injury to the leg. She explained that she had seen him be too rough with G.S., as in throwing him up in air, but acknowledged she had not seen appellant drop the child.

The State correctly notes that the standard is not what the appellant believed to be true, but what a reasonable person in the circumstances would observe. Ark. Code Ann. § 5-2-202(3). Because the evidence presented supports the circuit court's determination that the State proved by a preponderance of the evidence that appellant committed the offense of battery in the third degree, in violation of the terms of his suspended sentence, we affirm.

Affirmed.

WALMSLEY and GRUBER, JJ., agree.

*David L. Dunagin*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.