

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–14–1065

| | | |
|---|---|---|
| | | Opinion Delivered SEPTEMBER 16, 2015 |
| JOHN D. THOMPSON | APPELLANT | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. CR–13–544] |
| V. | | |
| | | HONORABLE JOHN N. FOGLEMAN, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant John Thompson was convicted by a jury of first-degree murder committed against his wife, and he was sentenced to forty years in prison. Mr. Thompson's sole point on appeal is that the trial court erred in denying his motion for a mistrial after the State elicited testimony during trial that had been prohibited by the trial court in a pretrial hearing. We conclude that the trial court committed no error in denying appellant's motion for mistrial, and therefore we affirm.

Mr. Thompson's wife, Danielle Thompson, was murdered in the Thompsons' home on the morning of August 27, 2011. She was found dead in her bed by her daughter, and had been killed by a single gunshot to the head. The police arrived at around 9:45 a.m., and the house had been ransacked with the back door left open. Many items were missing from the

house. Mr. Thompson had left home shortly after 6:00 a.m. that morning to go to work, and he was at work when Mrs. Thompson's body was discovered.

Prior to trial, Mr. Thompson filed a motion in limine to exclude the testimony of the medical examiner as it pertained to rigor mortis establishing the time of the victim's death. Appellant's motion asserted that he had learned through discovery that the medical examiner had told the lead investigator, who had arrived on the crime scene at 10:15 a.m., that there was a stage of rigor of between four and six hours based on the investigator's observations. Contending that rigor mortis is an inexact science and that the information upon which the medical examiner formed his opinion was unreliable, Mr. Thompson requested that improper testimony about rigor mortis be excluded.

The trial court held a pretrial hearing on Mr. Thompson's motion in limine. At the conclusion of the hearing the trial court granted the motion as a preliminary matter, prohibiting testimony about rigor mortis as it related to time of death until the court heard the medical examiner's testimony at trial. Ultimately, the State did not call the medical examiner to testify regarding the time of death.

At the jury trial, the State elicited testimony that Mr. Thompson had been having an affair shortly before his wife's death. Mr. Thompson had asked a neighbor if he could borrow or buy a gun two weeks before his wife was murdered. There was also evidence that Mr. Thompson was the beneficiary of his wife's $350,000 life insurance policy.

On the day of Mrs. Thompson's death, Mr. Thompson received a call from the victim's daughter stating that Mrs. Thompson was supposed to have picked her up from work

that morning but did not show up. Mr. Thompson then called a neighbor and asked him to pick up his stepdaughter and take her back to their home. When they arrived at the house, the victim's daughter discovered that her mother was dead. According to the neighbor, he called Mr. Thompson at work and advised him to come home, but did not say that his wife was dead. Before leaving work and driving home that morning, Mr. Thompson reportedly told an employee that "somebody done killed my wife." The subsequent police investigation discovered that many of the items missing from the house had been left on the porch of an abandoned house next door. In addition, a missing ring was found in Mr. Thompson's possession when he was arrested.

The appellant's motion for mistrial came during the testimony of the coroner, William Wolf. Mr. Wolf testified that he was called to the Thompson's residence and he observed that Mrs. Thompson was deceased, with her head resting on her hand. Mr. Wolf stated that rigor mortis had set in, and Mr. Thompson's counsel stated, "I don't know where we're going with this, but I've got a motion in limine that this wasn't going to be addressed until the medical examiner came." The prosecutor responded that he was not eliciting testimony about time of death, but was trying to establish that Mrs. Thompson appeared to have been shot while she was sleeping. The trial court then advised the prosecutor that he needed to lay some more foundation about the coroner's ability to testify about rigor mortis.

The following colloquy ensued:

MR. WOLF: I have handled dead bodies for twenty-five years. I pick them up all the time.



> PROSECUTOR: Okay. And in your experience as an embalmer, as a funeral home director do you see what bodies do when they're in rigor and when they're not in rigor?
> MR. WOLF: Yes, I know what they do.
> PROSECUTOR: Okay. And how is it you know what they do?
> MR. WOLF: Well, four to six hours–

Mr. Thompson's counsel then moved for a mistrial, contending that the trial court's prior in-limine ruling had been violated and that from the coroner's testimony the jury would conclude that the victim's death had occurred four to six hours before the coroner's arrival. The trial court denied appellant's motion for mistrial, stating:

> Well, first of all, the witness's testimony is not responsive to the question. Second, if it had gone further I would be very inclined to grant the mistrial. With him simply stating in four to six hours, he didn't say what happens. If the jury draws their own conclusion from that, they will be in error in doing so because they don't know what he was referring to, or going to be referring to. I'm going to deny the motion for a mistrial, I don't think that this rises to that level.

The trial court then offered to give a cautionary instruction directing the jury to disregard the last part of the coroner's testimony. Mr. Thompson requested such an instruction. The trial court admonished the jury that the last response of the witness was not responsive to the question asked and was stricken from the record. The trial court ordered the jury to disregard the witness's last answer.

On appeal, Mr. Thompson argues that the trial court erred in failing to grant a mistrial. He contends that the objectionable testimony by the coroner violated the trial court's pretrial ruling that testimony relating to rigor mortis as it related to time of death was not admissible pending further inquiry at trial. Although the jury was admonished to disregard the testimony, Mr. Thompson asserts that, under these circumstances, the admonition was

SLIP OPINION

insufficient to cure the prejudice. Mr. Thompson argues that the only assumption to be drawn from the coroner's testimony was that rigor mortis begins from four to six hours after death, which, if believed by the jury, would put the victim's death at a time when Mr. Thompson was present in the house.

A mistrial is an extreme remedy that should not be declared unless there has been error so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected. *Davis v. State*, 330 Ark. 501, 956 S.W.2d 155 (1997). Our supreme court has held that a cautionary instruction or admonition to the jury can make harmless any prejudice that might occur. *See Strawhacker v. State*, 304 Ark. 726, 804 S.W.2d 720 (1991). A mistrial is proper only where an error is beyond repair and cannot be corrected by any curative relief. *Taylor v. State*, 77 Ark. App. 144, 72 S.W.3d 882 (2002). The trial court has wide discretion in granting or denying a motion for mistrial and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. *Moore v. State*, 355 Ark. 657, 144 S.W.3d 260 (2004).

We hold that there was no abuse of discretion by the trial court in refusing to grant Mr. Thompson's motion for mistrial. Among the factors to consider in determining whether a trial court abused its discretion in denying a mistrial motion is whether the prosecutor deliberately induced a prejudicial response. *Armstrong v. State*, 366 Ark. 105, 233 S.W.3d 627 (2006). In this case it is evident that the prosecutor was not attempting to elicit improper testimony about rigor mortis as it related to establishing a time of death, but rather was trying to lay a foundation regarding the coroner's qualifications and to show that the victim appeared

to have been shot in her sleep. Moreover, Mr. Thompson's prompt objection to the coroner's testimony prevented the coroner from completing his sentence or making the substance of his response known to the jury. *See Shatwell v. State*, 2013 Ark. App. 568, 430 S.W.3d 132 (holding that counsel's prompt objection limited prejudice). The coroner merely said "four to six hours" without any further context or explanation. And there was no testimony as to what time the coroner examined the victim's body. Finally, the jury was admonished to disregard the coroner's unresponsive remark. The trial court is in a better position to determine whether a remark prejudiced the jury. *See Cupples v. State*, 318 Ark. 28, 883 S.W.2d 458 (1994). On this record we conclude that any possible prejudice was cured by the admonition to the jury and that there was no abuse of discretion in denying appellant's motion for mistrial.

Affirmed.

KINARD and GRUBER, JJ., agree.

*Bart Ziegenhorn*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Bailey Kane*, Ass't Att'y Gen., for appellee.